Ruffin, C. J.
 

 The objection to the evidence is not well founded. The acts and declarations of the father, while in possession of the slave, as to the nature of his possession and claim of title, are evidence on those points» though they occurred after his conveyance toh'isdaughter
 
 Askew
 
 v.
 
 Reynolds,
 
 1 Dev. & Bat. 367. Whether the statement of the son to the witness was competent or not, depends upon the question, whether the son was the father’s agent to enter into the arrangement, as it was called, with the witness, or induce the witness to become the surety for the appeal upon the security of the negro Lucinda, and the other negroes Upon that point it is very clear from the father’s language to his son and the witness, upon seeing them, that the son had been sent by the father to the witness upon some agency or with some proposal ; and, although not constituting direct or full proof of any agency, to the extent of engaging for the convey, anee of these slaves by the father, yet it is equally clear that those acts and declarations of the son and father were evidence tending to shew such an authority in the son.—
 
 *343
 
 They were, therefore, fit to be received and submitted to the jury for their consideration on that point. Indeed coupled with the other evidence, that the father claimed and used the negroes as his own for so long a period, both before and after that date, the evidence raised a strong presumption that the son had authority from the father, to make to the witness the proposal he did ; for, to what else did he allude, when he spoke of “the arrangement’» and said “there was no danger in it ?’’
 

 Of the instructions to the jury, the plaintiff, in the opinion of the Court, has no cause to complain. They are, of course, to be understood in reference to the facts of the case. They are, that a conveyance of a negro child of six years of age, supposing its date to be true, was made by a father to a daughter living within a mile of him-, without any valuable consideration, though purporting to be for the large price of $400, and was followed by the continued possession of the father for . eight years after-wards, and by his contracting large debts and making voluntary conveyances to his children of all his other property, in three or four years after its execution, the father during that period, using and claiming and offering to convey the negro as his own, and the conveyance to the daughter being, for the whole eight years, not only unreg. istered, but concealed, so as to be unknown to the nearest neighbors and most intimate friends. Certainly, under those facts, the transaction is presented to our consideration in a most questionable shape, and a strong presumption of fact arises, that it was not fair but merely colour, able, and, therefore, ought not to stand in prejudice to the debts contracted by the father on the faith of that property. That was not seriously resisted in the argument, but it was said that the presumption was purely one of
 
 iactf
 
 and therefore that it was the province of the jury, exclusively, to consider of its weight and it was erroneous in his Honor to make any observations on it. But that is
 
 *344
 
 not .the' law,- as.'it seems to the 'Court. ’There háve_ been so. many cases!n • this-State,, involving this -doctrine,., and it has been-so frequentiy- and.so --fully discussed Here,-as to make; it unnecessary how-to Uoók: beyond our own de - visions ;for authority-on 'it.- As - was-said
 
 ’in-Gregory v.
 
 Pevkins, 4 Dev. 50, fraud isnever, exclusively, a question of fact,- tbatfis,- in the sens.e of -leaving; it to-the-uncertain judgment--of'jurors to- give- to the intent-to -con vey(upon a secret trust, or to the fact of credit being given to a grantor, upon his continuing in -possession, such effect as to them in each .case may-seem proper,- butt-hat, on the'contrary, the effect of.such a-n-intent or-false credit, -if in-fact-'existing, depends upon the feed-principles of- the law. '-It is true, that, in respect to the consequences ,pf a grantor continuing -in -possession
 
 of a
 
 chattel,-it -was observed in
 
 that case,
 
 that,-contrary-to the rule as-once-laid down in England, we held,; that-it-did riot,
 
 per se,
 
 conclusively establish covin in the conveyance;-but was to be left to the jury as matter of-evidence. Net it .was further observed, that it was-to be left to them ‘-‘as a ground of presumption,” that there was a secret-trust or that (he parties had-a view to a. false credit of.the vendor,' which would be more or less strong under all the circumstances of the parties, the subject; length of possession, and the notoriety, of the title of the vendee and- of-i-t3 acquisition.” ' And it was explicitly sfat.ed,:that a conveyance by an owner in trust for himself or bis possession after an absolute conveyance, with a viéwto contract-debts,- on t’he credit of the property, of -which such possession is-‘-‘a ground of presumption,” is in law Fraudulent. Tn-the subsequent case of
 
 Askew
 
 v.
 
 Reynolds
 
 already cited, the opinionof the Court is again given 'Nery-distinctiy to the same effect. After noticing the old • rule, that- the 'possession-of. a donor, after an absolute transfer'-bf a chattel,- established- the- fraudulent intent, go as- to-render- any-'further--enquiry as- to-its existence -unavailing, the judgment of.the-'Court proceeds to set
 
 *345
 
 forth how far it had been modified. It states, that the doctrine had been so far overruled, as to* allow explanations to be made to repel the inference of the unlawful intent. Still it was declared, that the repugnance between the transfer - and the possession was such, as yet raised the presumption of. a secret trust for the benefit of the grantor; which, while it admits, also requires, an explanation, and which, unexplained or not satisfactorily exr plained, establishes the.- fraud. And, in applying the principle to the case then under consideration, the Couit said, that a possession for eight, or nine months, after making the conveyance, was sufficient to impress upon the transaction the character of a-fraudulent transfer,-unless from other facts and circumstances, another character could be clearly assigned to it. It is useless to quote other cases, as what fell from the Court in -those refe rred to plainly shews, that in-such a-Case, it is deemed a reasonable and legal presumption, upon the'grounds mentioned, that the conveyance and possession by the donor were fraudulent, open, indeed, to proof, or to inferences from other circumstances to the contrary. The, very ground of admitting the evidence of such possession, as relevant to the -question of fraud, is, that ittends to estaba lish and raises a presumption, that .the.conveyance was not
 
 bona fide,
 
 according to its purport, and that the possession was calculated to deceive those who dealt with the possessor; and it would seem impossible,.that it can "be wrong to lay such ground before the jury, so as to enable them to perceive the moro clearly the reasonable force of the presumption and the effect properly to be allowed to opposing and explanatory evidence. The. in*% structions in the present case did nothing more than that. In truth they stated the presumption under, consideration, its force and effect and its susceptibility of being rebutted, substantially as laid down and ; much ; in the same.language used by this Court,in
 
 Askew
 
 v.
 
 Reynolds.
 
 It was,
 
 *346
 
 however, contended at the bar, that, since that]|case, the law had been altered by the 4th section of the Act of 1840, ch. 28. But that is clearly a mistake ; the only provision of that section is, that a gift by one indebted at the time is not absolutely void as against his creditors, by reason merely of such indebtedness, without regard to the sufficiency of the property reserved by the donor for the satisfaction of his debts ; the affirmative of which had before been held to be law (whether the donor or do-nee had the possession) upon the ground that the donor could not honestly give away his property to the defeating of his creditors. But that is, altogether, a different species of fraud from that here imputed and depends upon different facts and considerations ; and the law touching this case is entirely unaffected by the statute. His Honor, therefore, was fully authorised by previous adjudications to lay the principle down to the jury as he did. Indeed, he went further on behalf of the plaintiff, than was strictly proper, in saying that the testimony of Ratcliff, the father, repelled the presumption of fraud, and, if believed, entitled the plaintiff to recover. It is true, that the witness denied there was a trust for himself, simply by say» ing, that a gift to his daughter was intended and that there was no fraud in the gift. But he failed entirely to account for the secrecy of the conveyance and its concealment for eight years, for the falsehood in setting forth the consideration in the deed, and for his long subsequent possession and apparent ownership of the other property, which, he admitted, he conveyed to his other children, whereby he was able to get credit to the value of all of it and perhaps more. Upon all those material points, he deposed to nothing, saving only, that he kept the negro — then six years old — to wait on his wife, who was sickly at that time. But that circumstance does not remove those grave grounds of suspicion and presumption of fraud, since he did not state, that his wife continued to
 
 *347
 
 need or to have the girl as a nurse — a very poor one truly — or even that she lived through those eight years or any considerable portion of them. For the probable, and, in this case, the actual, deception of the persons, with whom he contracted debts, arising from his possession of the slave, and not only the apparent, but the claimed, property in her for such a length of time and from the omission of the plaintiff, for that period, to assert a title under the conveyance to his wife or to let its existence be known, the witness furnishes no reason or excuse whatever, but leaves the presumption raised by such deception to operate unimpeded. It is quite certain, therefore, that the plaintiff had all the advantage in the charge, which he could claim, and the judgment must be affirmed.
 

 Pea Cukiam. Judgment affirmed.